**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

JAMES EVERETT SHELTON and JON
FREY, on behalf of themselves and others
similarly situated,

        Plaintiffs,

v.

DIRECT ENERGY, LP, and KAA ENERGY,
INC.

        Defendants.

Case No. 2:18-cv-4375-CMR

**DEFENDANT DIRECT ENERGY, LP'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Direct Energy, LP moves for dismissal of Plaintiffs' Amended Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of its motion,

Direct Energy respectfully shows the Court as follows:

## I.    INTRODUCTION

Direct Energy's prior motion to dismiss showed that Plaintiffs' Original Complaint was

rife with demonstrably false allegations and legal defects. Plaintiffs amended in response,

removing some of the false statements. However, Plaintiffs' Amended Complaint suffers from

the same fundamental legal problem that was apparent in the Original Complaint: Plaintiffs

James Everett Shelton and Jon Frey lack Article III standing to assert their respective claims

because neither suffered an injury in fact as a result of the calls at issue. The Amended

Complaint presents no new facts or allegations to cure this fatal defect. Plaintiff Shelton again

fails to identify how the single call at issue – one which he consented to receiving and

purposefully extended for nearly twenty minutes – manifested any type of "injury" contemplated

by the TCPA. Likewise, Plaintiff Frey fails to show how two permissible calls to his landline –
during which he enrolled with Direct Energy – injured him. As demonstrated by the
transcriptions of the calls at issue, which are attached here, there is no injury in fact where both
Plaintiffs expressed an interest in and ultimately signed up for Direct Energy services. The
TCPA does not penalize this activity, which means neither Plaintiff suffered a legally cognizable
injury. Consequently, both Plaintiffs lack Article III standing. Moreover, Plaintiff Frey fails to
state a claim under the TCPA because both of the calls at issue are permissible under the statute.
Finally, Plaintiff Frey attempts to distract from this deficiency in his TCPA claim by bringing a
claim for purported violations of Pennsylvania's Telemarketer Registration Act ("PTRA").
However, this claim is also fatally flawed. Because, Direct Energy is not a "telemarketer," as
defined by the PTRA, it cannot be liable under the statute. Plaintiff Frey therefore fails to state a
claim with regard to his new state law cause of action as well. Plaintiffs' attempt at repleading
does not—and cannot—save their claims. The case should be dismissed.

## II.    BACKGROUND

### A.  Plaintiff James Everett Shelton

Mr. Shelton is a professional TCPA plaintiff who has filed approximately 37 TCPA
lawsuits in the last two years. Based on information provided by Direct Energy's telemarketing
vendor, Mr. Shelton completed an online survey, consenting to receive telemarketing calls to his
cellular phone number (484) 626-XXXX[1] regarding services offered by Direct Energy:

---

[1] Redacted to protect Mr. Shelton's privacy. Direct Energy can provide the full telephone
number to the Court upon request.



Shortly thereafter, Mr. Shelton received a single phone call from Direct Energy's vendor and ***voluntarily*** completed a 19-minute phone call with the vendor's representative.

During the call, Mr. Shelton indicated that he was interested in switching energy providers and desired to use Direct Energy's services. *See* Certified Tr. of Mr. Shelton's Phone Call at 3:3-5:3 attached as Ex. 1 to the Declaration of David Atiqi ("Atiqui Decl.").[2] When presented with Direct Energy's offer of a fixed rate over 36 months, Mr. Shelton responded: "That sounds a lot better than what I currently have." *Id*. at 3:3-7. Mr. Shelton provided the caller with his phone number, address, email, and information on his current energy provider before ultimately switching to Direct Energy. *Id*. at 5:14-7:18. When the vendor representative asked Mr. Shelton about his gas bill, Mr. Shelton encouragingly responded, "Yeah. You need me to pull that up?" *Id*. at 4:17-20. The vendor representative then presented Mr. Shelton with an offer for gas at a fixed rate over 36 months. *Id*. at 4:21-5:1. When asked if the gas offer sounded good, Mr. Shelton said: "It does." *Id*. at 5:2-3. Mr. Shelton then represented that his current address is in Cleveland, Ohio. *Id*. at 7:1-5. The vendor representative told Mr. Shelton that he would now

---

[2] The Court may consider Plaintiffs' call transcripts in connection with the Rule 12(b)(1) component of Direct Energy's motion because Direct Energy is making a factual attack on Plaintiffs' standing. *See Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a factual attack, the court may consider evidence outside the pleadings.") (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). The Court may also consider these transcripts under Rule 12(b)(6) because the enrollment calls are referenced in and central to the Complaint. *See Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 559 (3d Cir. 2002) ("Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss.") (citation omitted);

be speaking with a third-party verifier to confirm that he wanted to become a Direct Energy customer, to which Mr. Shelton responded: "Awesome." *Id*. at 11:10-12:15. Finally, when the verifier asked Mr. Shelton if he accepted the terms of the offer and agreed to become a Direct Energy customer, Mr. Shelton affirmatively responded with "Yeah." *Id*. at 17:15-17.

At no point did Mr. Shelton: stop the call; hang up; question how the caller acquired his number; or raise any concern with the call whatsoever. Mr. Shelton never even asked for the call to end. As is plainly evident by the transcript, the phone call was neither unwanted nor harassing. Nevertheless, Mr. Shelton alleges he was "harmed" because he was "temporarily deprived of legitimate use" of his telephone. Far from the truth, it was Mr. Shelton's decision to extend the phone call to 19 minutes ***and sign up*** for Direct Energy's services. Nor did Direct Energy "invade" Mr. Shelton's privacy, as he voluntarily provided the caller with his cell phone number, residential address, and email. The reality is that Mr. Shelton, an experienced TCPA litigant, suffered no demonstrable injury in fact. As such, his claims should be dismissed.

### B. Plaintiff Jon Frey

On August 8, 2018, Jon Frey received a call on his landline from a vendor representative, who stated that she was calling on behalf of Direct Energy. At no point during this call did Mr. Frey ask why he was being contacted, hang up, or request not to be called. In fact, as demonstrated by the call transcript, Mr. Frey expressed enthusiasm about Direct Energy's offer for price savings on his electricity plan and opted to sign up with Direct Energy. Approximately 8 minutes into the call, Mr. Frey confirmed that the number he was speaking on was the best telephone number to reach him at. *See* Certified Tr. of Mr. Frey's Phone Calls at 7:17-19, Atiqi Decl., Ex. 2. Approximately 12.5 minutes into the call, Mr. Frey confirmed he understood that, by selecting Direct Energy, he would be charged a certain price per kilowatt-hour, and that the price was protected not to increase for 36 months. *Id*. at 10:11-23. He confirmed he had no

additional questions about 14 and a half minutes into the call. *Id*. at 12:8-15. Sarah, the call representative, explained that Mr. Frey would be transferred to the verification process in order to finalize everything and confirm, for quality control purposes, that he understood what he was signing up for. *Id*. at 12:16-13:1. The call then dropped at around the 16-minute mark.

Immediately after the call dropped, Sarah called Mr. Frey back so that he could complete the verification process. *Id*. at 15:5-16. He did not indicate that he was upset or annoyed that he was being called – and, contrary to the allegation in his Amended Complaint, he did not state that he had tried to terminate the call. In fact, he jumped back into the enrollment verification process, answering questions indicating he understood what he was signing up for. He was explicitly asked: "Do you accept the terms of this offer and agree to become a Direct Energy customer?" to which he replied: "Yes." *Id*. at 18:20-23. Mr. Frey asked if he would be receiving confirmation of the transaction in an email, and when told he would be emailed and mailed the confirmation, did not object to receiving the communications. *Id*. at 20:23-21:7. Sarah concluded the call by stating: "Thank you for becoming a Direct Energy customer, Jon," to which Mr. Frey replied: "Thank you." *Id*. at 22:3-8.

In the Original Complaint, Mr. Frey alleged that he "told the Direct Energy representative that he was not interested in changing energy providers" at least twice, and that he "asked that his number be placed on Direct Energy's internal Do-Not-Call list and hung up the phone." *See* Orig. Compl. ¶ 35. Unsurprisingly, the Amended Complaint *removes every statement* Mr. Frey originally alleged, presumably because Rule 11 required it. As the call transcript reveals, Mr. Frey's originally allegations were fictitious and not asserted in good faith. Now, the Amended Complaint merely alleges that Mr. Frey was "not interested" in switching energy providers even though this is exactly what he did during the calls.

Mr. Frey further claims he was injured by the calls because "they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Mr. Frey." Again, these allegations are demonstrably false, as the recorded call transcripts show. Mr. Frey signed up for Direct Energy's services, never expressed any discontent during the call, and never requested to be placed on any Do-Not-Call list. Mr. Frey's allegations flatly misrepresent the nature of the calls. Because Mr. Frey lacks any injury in fact, and thus, has no standing to assert violations of the TCPA, his claims should be dismissed. Mr. Frey also fails to state a claim entitling him to TCPA relief because both calls are permissible under the TCPA. Finally, Mr. Frey's state law claim should also be dismissed under Rule 12(b)(6) because Direct Energy is not a "telemarketer" as defined by the PTRA.

### III.    STANDARD OF REVIEW

Rule 12(b)(1) authorizes the dismissal of a complaint for lack of subject matter jurisdiction or if the plaintiff lacks standing to bring the claim at issue. *See Bell v. Money Resource Corp.*, No. 08-639, 2009 WL 382478, at \*2 (E.D. Pa. Feb. 13, 2009). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould*, 220 F.3d at 176. "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). When considering a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In short, a factual attack argues that, while the pleadings themselves facially establish jurisdiction, one or more of the allegations is untrue, resulting in the case falling outside of the court's jurisdiction. *See Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 335 (E.D. Pa. 2014).

Under a 12(b)(6) analysis, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Twombly*, 550 U.S. at 557. "Courts are not, however, bound to accept as true legal conclusions couched as factual allegations." *Williamson v. City of Philadelphia*, 169 F. Supp. 3d 630, 633 (E.D. Pa. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (internal quotation and citation omitted).

## IV.    ARGUMENT & AUTHORITIES

### A. There Is No Injury in Fact. Plaintiffs Signed Up for Direct Energy's Services.

Article III standing demands that a plaintiff demonstrate an "injury in fact." *See Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, 307 F. Supp. 3d 402, 414 (W.D. Pa. 2018) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016)). Critically, an injury must be concrete (it must actually exist) and particularized (it affects the plaintiff in a personal and individual way). *See Spokeo*, 136 S. Ct. at 1548. If there is no injury in fact, there is no constitutional standing, and the Court lacks subject matter jurisdiction. *See, e.g.*, *Mildon*, 307 F. Supp. 3d at 411 (citing *Taha v. County of Bucks*, 862 F.3d 292, 301 n.4 (3d Cir. 2017)).

Plaintiffs (both Shelton and Frey) cannot demonstrate any concrete or particularized injury sufficient to establish an injury in fact. It belies logic to imagine that either Shelton or Frey could purport to have suffered some kind of injury by receiving calls on behalf of Direct Energy when, as a result of those very calls, they ***both*** gladly signed up to be Direct Energy's customers, they ***both*** signed up to take advantage of Direct Energy's electricity cost savings, and neither Plaintiff ***at any point*** in the telephone calls stated that he was somehow upset, irritated, bothered, or confused by the call. Stated simply, both Plaintiffs initially sought to benefit from the deals offered in the phone calls demonstrating that the calls were not unwarranted, nuisances, invasive, costly, or inconvenient.

### B. Plaintiff Frey Suffered No Injury in Fact Because the Calls Were Permissible Under the TCPA.

Mr. Frey's Amended Complaint does not—and cannot—refute the fact that he suffered no cognizable TCPA injury. The Amended Complaint also fails to state a claim entitling Mr. Frey to TCPA relief. The first call he received is not actionable under the TCPA, and to the extent he attempts to claim that he suffered an injury by virtue of receiving a second call (one that was a continuation of the first call and only made because the first call dropped), Mr. Frey's argument fails because the second call is permissible pursuant to the "Established Business Rule." Controlling law dictates that Mr. Frey has not suffered a TCPA injury and has failed to state a claim under the TCPA. Mr. Frey's TCPA claim warrants dismissal under Federal Rules 12(b)(1) and 12(b)(6).

The first telephone call made to Mr. Frey is categorically excluded from the strictures of the TCPA. Specifically, Mr. Frey claims that the call violated the TCPA because he was registered on the national "Do Not Call" list. However, 47 U.S.C. § 227(c)(5), the statutory provision under which Mr. Frey brings suit, provides for a private right of action for "[a] person

who has received ***more than one*** telephone call within any 12-month period by or on behalf of the same entity." (emphasis added). Assuming Mr. Frey was indeed on the Do Not Call list, the first call made to him certainly did not violate the provision under which he brings his claim.

Similarly, the second call did not violate the TCPA for the simple reason that, by the time the second call was initiated, Mr. Frey and Direct Energy had an "established business relationship" by virtue of the conversation and transaction made in the first call. Federal regulations define an "established business relationship" as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. 64.1200(f)(5); *Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589, 603-04 (E.D. Pa. 2012); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (noting the established business relationship exemption applies to calls made to residential landlines). Here, a relationship between Mr. Frey and Direct Energy was formed during the first telephone call, when Mr. Frey agreed to sign up for Direct Energy's services. *See* Atiqi Decl., Ex. 2 at 14:24-15:16. Consequently, because Mr. Frey had indicated he wished to sign up for Direct Energy's services, he was immediately called back to continue the verification process, which was successfully completed. *Id.* at 15:20-20:19. The business relationship established in the first call exempts the second call from the TCPA, which again was only made to complete the verification process. *See Johansen v. National Gas & Electric LLC*, Case No. 2:17-cv-587, 2017 WL 6505959, at \*3 (S.D. Ohio Dec. 20, 2017) (finding that a plaintiff, who was

represented by two of Plaintiffs Shelton's and Frey's law firms and who "posed" as an interested customer and provided personal information during a telemarketing call, created an established business relationship with regard to subsequent calls from the telemarketer and based his lawsuit on "a ruse").

Plaintiff Frey's efforts to manufacture an injury, where none exists, is contradicted by the facts, as demonstrated by the call transcript. *See Gould*, 220 F.3d at 176 ("In reviewing a factual attack, the court may consider evidence outside the pleadings."). Indeed, nearly every allegation regarding his phone call with Direct Energy's representative is demonstrably false.[3] The call did not deprive him of any phone use nor invade his privacy when in fact he agreed to participate in and continue the call. Moreover, it is absurd for Mr. Frey to characterize the calls as obnoxious or annoying considering he enthusiastically accepted the benefit of saving on his electric bill by signing up with Direct Energy.

| Complaint | Call Transcript | |
|---|---|---|
| Mr. Frey was "temporarily deprived of legitimate use of [his] phone[] because the phone line was tied up and [his] privacy was improperly invaded." Am. Compl. ¶ 57. | Verifier: | I'm going to ask you a few questions to confirm the application details with you. Please respond to the following with a clear yes or no. Are you – |
| | Mr. Frey: | Okay. (Atiqi Decl., Ex. 2 at 17:11-16) |
| "[T]hese calls injured Mr. Frey because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Mr. Frey." Am. Compl. ¶ 49. | Verifier: | Thank you for enrolling with Direct Energy. You've made the right choice. Have a great day. |
| | Mr. Frey: | Thank you. (*Id*. at 20:14-17) |

---

[3] Again, the Amended Complaint removes every statement he claimed to have made in the Original Complaint because they were false and affirmatively disproven by the call transcript.

Unquestionably, and in direct contradiction to his allegations, Mr. Frey is wrong that the phone calls were harassing or that his privacy was invaded. In sum, Mr. Frey expressed no indication of irritation or displeasure at receiving the call and ultimately—at his own request—signed up for Direct Energy services. Accordingly, Mr. Frey cannot demonstrate any concrete or particularized injury as a result of the calls. Rather, he enthusiastically signed up for Direct Energy's services without complaint, and in any event, both of the calls were excluded from the protective provisions of the TCPA. Mr. Frey has no standing to assert a TCPA violation. Moreover, he has failed to state a claim entitling him to TCPA relief considering both calls are permissible under the statute. Pursuant to Federal Rules 12(b)(1) and 12(b)(6) his claim should be dismissed.

### C.  Plaintiff Shelton Is A Serial TPCA Litigant And Has Suffered No Legal Injury.

The Amended Complaint does not change the fact that Plaintiff Shelton lacks standing, as he is a serial TCPA litigant manipulating the TCPA to trap companies that respond to his requests to be called.

"Congress enacted the TCPA 'to protect individual consumers from receiving intrusive and unwanted calls.'" *Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *5 (E.D. Pa. Aug. 17, 2017) (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013)). "[I]t is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." *Stoops* 197 F. Supp. at 805 (internal quotation and citation omitted). "TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny on the issue of standing in light of *Spokeo*." *Morris v. Unitedhealthcare Ins. Co*., No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at *6 (E.D.

Tex. Nov. 9, 2016), *report and recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016). "While most calls that violate the TCPA will no doubt cause irritation, invasion of privacy, or unwanted intrusion, it does not necessarily follow that every call will do so." *Knutson v. Blue Light Sec., Inc.*, No. 17-CV-134-LAB (JMA), 2018 WL 1172611, at \*3 (S.D. Cal. Mar. 6, 2018). "Simply asserting facts that plausibly show a TCPA statutory violation is not enough to trigger constitutional concreteness." *Hossfeld v. Compass Bank*, No. 2:16-CV-2017-VEH, 2017 WL 5068752, at \*7 (N.D. Ala. Nov. 3, 2017).

As indicated above, Plaintiff is a professional TCPA plaintiff. He has filed approximately 37 TCPA lawsuits in the last two years. *See* Declaration of Steven M. Lucks, Ex. A (Compilation of TCPA Cases Initiated by James Shelton). Moreover, Mr. Shelton operates a business called "Final Verdict Solutions." His public website advertises two business ventures: a professional judgment recovery outfit and a TCPA litigation operation. His company's website previously included a tab called "JAMES' TCPA CASES" under which the following notice was provided:[4]



In this case, Mr. Shelton brazenly attempts to manufacture a TCPA claim out of a call he previously consented to and welcomed upon receipt. The call was neither intrusive nor

---

[4] *See Shelton v. Nat'l Student Debt Assist, LLC, et al*., Case No. 2:18-cv-02545(MSG), Doc. No. 15-1, pg. 14.

unwanted. Again, based on information provided by Direct Energy's vendor, Mr. Shelton completed an online survey consenting to the very call that is the subject of his complaint. He then ***chose to accept*** the services offered by Direct Energy during the call. *See* Atiqi Decl., Ex. 1 at 4:21-5:3. When informed he was about to go through the verification process so that he could become a Direct Energy customer, Mr. Shelton replied, "awesome." *Id*. at 12:12-15.

Mr. Shelton suffered no injury contemplated by the TCPA. It defies logic for Mr. Shelton to complain about the "nuisance" of a phone call that he actively advanced for nearly twenty minutes and found to be "awesome." Mr. Shelton's desire to litigate a call that he used to lower his electric bill is unpersuasive. There is nothing in this case that would demonstrate it is anything other than Mr. Shelton attempting to abuse the TCPA and pervert the TCPA's purpose of protecting consumers from unwanted telemarketing calls for his own financial gain. This profit-making purpose denies Mr. Shelton Article III standing because he lacks the kind of particularized injury the TCPA is meant to remedy.

The entire case rests on a single call that Mr. Shelton consented to participate in and during which he enthusiastically chose to become a customer of Direct Energy. Indeed, Mr. Shelton cannot establish that he suffered an injury in fact. Far from merely being a "litigant that knows his rights," Mr. Shelton is attempting – and failing – as a professional plaintiff to create a TCPA claim where none exists. Mr. Shelton consequently lacks constitutional standing to bring his suit and the Court should dismiss his claim under Rule 12(b)(1).

### D. Plaintiff Frey Fails to State a Claim Under the PTRA Because Direct Energy is Not a "Telemarketer."

Plaintiff Frey seeks relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PCPL"), because the PTRA considers violations of the PTRA to also be violations of the PCPL. 73 P.S. § 2246(a). The Amended Complaint relies on provisions of the

PTRA that only apply to "telemarketers" as it is defined in the statute. *See* 73 P.S. §§ 2245.1-2. The PTRA's definition of "telemarketer" specifically exempts businesses that are regulated or licensed by a Pennsylvania agency. 73 P.S. § 2242(5). Pennsylvania's Public Utility Commission ("PUC") is an administrative agency of Pennsylvania. *See* 66 Pa. C.S.A. § 301(a).

Here, Plaintiff Frey fails to plead facts showing that Direct Energy is a "telemarketer" under the PTRA. And the reason is obvious: Direct Energy is regulated by the PUC and is therefore *not* a "telemarketer" under the statute. *See* 73 P.S. § 2242(5); Pa. C.S.A. § 301(a). As a retail energy provider, Direct Energy is licensed by the PUC[5] and has been licensed since 2005.[6] Thus, Plaintiff Frey has no private right of action against Direct Energy under the PTRA or PCPL. Even if the allegations against Direct Energy were true (they are not), Plaintiff Frey is still not entitled to relief under either state statute. There is no provision in the PTRA that permits a consumer to sue a business that is exempted from its definition of "telemarketer." Thus, Plaintiff Frey's failure to state a claim warrants its dismissal under Rule 12(b)(6).

## V.    CONCLUSION

As shown, neither Mr. Shelton nor Mr. Frey suffered any concrete or particularized injury and therefore they lack Article III standing to bring their respective TCPA claims. Shelton received a single call, signed up for Direct Energy services, and is a TCPA serial litigant. Far

---

[5] *See* Public Utility Commission Licensed Suppliers List, Docket No. A-110164, http://www.puc.state.pa.us/consumer_info/electricity/suppliers_list.aspx (last visited Nov. 26, 2018) (listing Direct Energy Services LLC, Direct Energy Business, LLC, and Direct Energy Business Marketing, LLC).

[6] *See* Public Utility Commission Order regarding License Application of Direct Energy Services, LLC, Docket No. A-110164, dated Apr. 21, 2005, http://www.puc.state.pa.us//PcDocs/534397.doc. The Court may take judicial notice of public records when considering a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (permitting a district court to take judicial notice of SEC filings which it considered matters of public record); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (stating that letter decisions of government agencies and published reports of administrative bodies are public records and may be considered on a motion to dismiss).

from the alleged victim of harassing telemarketing calls, Shelton continues to abuse the TCPA and assert meritless claims. Similarly, Frey's allegations, which are not entitled to any presumption of truthfulness, are plainly false. Frey signed up for Direct Energy's services and was in no way "injured" by the initial call or follow-up call. Indeed, the two calls at issue are permissible under the TCPA meaning Plaintiff Frey has also failed to state a claim entitled him to TCPA relief. Finally, Frey's PCPL claim fails because Direct Energy is exempt from the PTRA's definition of a "telemarketer" – he has clearly failed to state a claim under either statute. Because there are no legal injuries in this case, the Court does not have subject matter jurisdiction over the TCPA claims asserted in the amended class action complaint. Because Plaintiff Frey has no private right of action against Direct Energy under the PTRA, he fails to state a claim under Rule 12(b)(6). Accordingly, the Amended Complaint should be dismissed with prejudice.

Dated: November 27, 2018    By:    /s/ *Steven M. Lucks*
FISHKIN LUCKS LLP
Steven M. Lucks, Esq.
1601 Market Street, 19th Floor
Philadelphia, PA 19103
(215) 607-2500
slucks@fishkinlucks.com

-and-

MCDOWELL HETHERINGTON LLP
Michael D. Matthews, Jr.*
William B. Thomas*
1001 Fannin Street, Suite 2700
Houston, Texas 77002
(713) 337-5580
matt.matthews@mhllp.com
william.thomas@mhllp.com

*admitted pro hac vice*

*Attorneys for Direct Energy, LP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 27th Day of November via CM/ECF on all counsel of record.

/s/ *Steven M. Lucks*

Steven M. Lucks
Attorney for Direct Energy, LP